IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                   CRIMINAL NO. 3:24cr82-CWR-ASH

MICKEY DOSTER

## MOTION TO DISMISS THE INDICTMENT

COMES NOW the defendant, MICKEY DOSTER, by and through the undersigned counsel, who files this Motion to Dismiss the indictment charging him with possession of a firearm by a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  ECF 3.  Doster argues that this Court should dismiss the indictment because § 922(g)(1) violates the Second Amendment to the United States Constitution and is unconstitutional as applied to him.  While Doster recognizes that the Fifth Circuit recently denied a facial challenge to § 922(g)(1) under the Second Amendment in *United States v. Diaz*, 116 F.4th 458, 472 (5th Cir. Sept. 18, 2024),[1] he raises the issue here to preserve it for further review.  Moreover, and alternatively, if certain criminal convictions can

---

[1] Counsel notes that because the mandate has not yet issued in *Diaz*, it is not yet a final decision of the Fifth Circuit.  *See Diaz*, No. 23-50452, ECF 135 (indicating that the Government has until October 18, 2024 to respond to the defendant's request for rehearing en banc); *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) ("This court retains control over an appeal until we issue a mandate.  Before our mandate issues, we have the power to alter or modify our judgment."); *id.* at 468 ("Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate.").

Regardless, Doster treats *Diaz* as binding precedent for purposes of this motion and reserves the right to amend his motion, should the opinion in *Diaz* be vacated or altered.

justify disarmament under *Bruen*'s[2] framework, § 922(g)(1) is void for vagueness, and thus facially unconstitutional on that ground.

Although foreclosed by current pre-*Bruen* Fifth Circuit precedent, Doster also urges that § 922(g)(1) constitutes an unconstitutional extension of Congress's authority under the Commerce Clause, and that it violates the equal protection guarantee. Applying a faithful application of the Supreme Court's guidance in *Bruen* and *Rahimi*, the indictment against Doster must be dismissed on any or all grounds raised within.

## I.    Factual Background[3]

The grand jury alleged that on or about February 24, 2024, Doster violated the possession prong of 18 U.S.C. § 922(g)(1) and § 924(a)(8) by knowingly possessing a firearm that was in and affecting commerce. ECF 3 (indictment). Doster has prior burglary convictions and a prior grand larceny conviction. There is no allegation that Doster traveled across state lines himself with the firearm or engaged in sales transactions across state lines.

## II.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trail of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record). Otherwise,

---

[2] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

[3] Doster admits these facts solely for the purposes of this motion.

the court would waste resources by allowing a case to proceed to trial and later dismissing on the same legal argument and facts presents through a pretrial motion. *See Flores*, 404 F.3d at 325.

### III.    Second Amendment Argument

The Second Amendment mandates: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.  Section 922(g)(1) criminalizes firearm possession for any person who has been convicted of a crime punishable for a term exceeding one year.  Under the framework announced in *Bruen*, § 922(g)(1) violates the Second Amendment both facially and as applied to Doster because the conduct prohibited by § 922(g)(1) is covered by the Second Amendment's plain text and its prohibition conflicts with the country's historic tradition of firearms regulations.  Although the Fifth Circuit recently held that § 922(g)(1) is not facially unconstitutional, *see Diaz*, 116 F.4th at 472) foreclosing this challenge, Doster raises the issue to preserve it for further review.

**A.    *Bruen* "fundamentally changed" the framework for analyzing Second Amendment challenges.**

The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).  In *Bruen*, the Court set out "the standard for applying the Second Amendment":

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.  In other words, when the plain text of the Second Amendment covers the prohibited conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id.* at 19.

"Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 24 (internal quotation marks and citation omitted).

The Fifth Circuit has repeatedly affirmed that "*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering our prior precedent obsolete." *United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir. 2023), *rev'd and remanded*, 144 S. Ct. 1889 (2024) (*Rahimi I*); *see Diaz*, 116 F.4th at 465 (same); *see id.* (explaining that "[t]he law of orderliness mandates that we abandon that prior [pre-*Bruen* § 922(g)] precedent"). Although the Supreme Court disagreed with the Fifth Circuit's ultimate outcome in *Rahimi I*, the Court did not depart from the new standard outlined in *Bruen*. *See Rahimi*, 144 S. Ct. at 1897-98. *Rahimi* was a narrow decision that embraced *Bruen*'s focus on text, history, and tradition.

**B.      The Second Amendment's plain text covers possession under § 922(g)(1).**

Doster's conduct is clearly covered by the Second Amendment. *See Diaz*, 116 F.4th at 467 ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Section 922(g)(1) is a complete and permanent ban on all firearm possession, with no limitation on type or use. Thus, because firearm possession is conduct covered by the Second Amendment, it is presumptively protected. *See Bruen*, 597 U.S. at 17.

It is likewise now undisputed in this Circuit that those with felony convictions are among "the people" protected by the Second Amendment. *Diaz*, 116 F.4th at 466. While a defendant's status as a felon is relevant to the court's *Bruen* analysis, "it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Id.* at 466-67 (quoting *Bruen*, 597 U.S. at 24). The Second Amendment right belongs to "all Americans." *Heller*, 554 U.S. at 580-81. Accordingly, the categorical ban on an individual's possession of a firearm based

on their prior conviction status is presumptively unconstitutional under the plain text of the Second Amendment.

C.    **Section 922(g)(1) is unconstitutional under the Second Amendment.**

The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), *see Diaz*, 116 F.4th at 467, therefore the burden shifts to the Government to demonstrate that regulating Doster's possession of a firearm "is consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24. To prove that a challenged regulation is consistent with the Nation's historical tradition of firearm regulation, the Government faces a "heavy burden, as the Second Amendment 'is *not* a second-class right.'" *United States v. Connelly*, --- F.4th ---, No. 23-50312, 2024 WL 3963874, *3 (5th Cir. Aug. 28, 2024) (quoting *Bruen*, 597 U.S. at 70).

In *Bruen*, the Court held that to justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 24. *Rahimi* clarified that "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." 144 S. Ct. at 1898 (internal quotation marks and citations omitted). "Why and how the regulation burdens the right are central to this inquiry." *Id.*; *see Bruen*, 597 U.S. at 29. Yet, "[e]ven when a law regulates arms-bearing for a permissible reason, . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 144 S. Ct. at 1898.

For challenged and historical laws to be "relevantly similar" they must "share a common 'why' and 'how': they must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how')." *Connelly*, 2024 WL 3963874, at *3. In the

context of § 922(g)(1), courts must consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 29). Although the law need not be a "dead ringer" or "historical twin," it must comport with the principles underlying the Second Amendment. *Rahimi*, 144 S. Ct. at 1897-89 (internal quotations marks and citation omitted).

**D.    Section 922(g)(1) is unconstitutional as applied to Doster.**

In *Diaz*, the Fifth Circuit recently upheld § 922(g)(1)'s constitutionality against as-applied and facial challenges brought by a defendant with disqualifying convictions for "car theft, evading arrest, and possessing a firearm as a felon." 116 F.4th at 467. The court reasoned that because some thieves in Colonial and Founding Era America were subject to the death penalty, "if capital punishment was permissible to respond to theft, then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.* at 469. Although that analysis resolved the as-applied challenge against Diaz, the Fifth Circuit recognized that the opinion would "not foreclose future as-applied challenges by defendants with different predicate convictions." *Id.* at 470 n.4.

Doster is disqualified from possessing a firearm under § 922(g)(1) based on prior convictions for burglary and grand larceny, but in the Founding Era, many defendants convicted for similar crimes were subject to a term of imprisonment, not the death penalty or forfeiture of estate. Since *Diaz* treats the historical practice of harsh felony punishments—execution and estate forfeiture—as equivalent to disarmament, § 922(g)(1) can be constitutionally applied to Doster only if his disqualifying convictions would have been subject to those punishments in the Founding Era. *See id.* at 469-70. While Doster recognizes that his grand larceny conviction may disqualify him based on *Diaz*, it remains the Government's burden to prove that "[d]isarming" Doster "fits

6

within" any "tradition of serious and permanent punishment" for offenders convicted of similar crimes in the Founding Era. *Diaz*, 116 F.4th at 470. Section 922(g)(1) is accordingly unconstitutional as applied to him.

### E.     Section 922(g)(1) is facially unconstitutional under the Second Amendment.[4]

Section 922(g)(1) broadly addresses a general societal concern that has persisted since the eighteenth century: how society treats those members who violate the law, including whether those members retain their constitutional right to keep and bear arms (the "why"). The Government cannot meet its burden under *Bruen* and *Rahimi* because the Nation's historical tradition of regulating firearms, even against those with felony convictions, is incompatible with the total and permanent categorical ban imposed by § 922(g)(1) (the "how"). There simply is no "relevantly similar" historical tradition of permanently stripping people with felony convictions of their Second Amendment rights. On its face, § 922(g)(1) prohibits Doster, a member of "the people" protected by the Second Amendment, from engaging in the exact conduct the Amendment sought to place beyond regulation—the mere possession of a firearm. Since § 922(g)(1) facially prohibits conduct protected by the Second Amendment, the law is facially unconstitutional. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.3d 415, 2024 WL 3311366, at *11 (5th Cir. July 5, 2024).

Many scholars have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." C. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 HASTINGS L.J. 1371, 1374-79 (2009); C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 HARV. J.L. & PUB.

---

[4] Although the Fifth Circuit rejected a facial challenge to § 922(g)(1) under the Second Amendment in *Diaz*, Doster maintains the argument here to preserve the issue for further review.

POL'Y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century). Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter*, 919 F.3d at 451, 453-64 (Barrett, J., dissenting) (surveying history); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century.").

The Government has agreed. In pre-*Bruen* briefing, the Government acknowledged that § 922(g)(1) "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27–28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)). The Government has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." *E.g.*, U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) (citing Marshall, *supra*, at 696–728). Not until *Bruen* was decided did the Government change its position.

The Government has repeatedly attempted to justify § 922(g)(1) by pointing to historical authority that allowed for the disarmament of disempowered minority communities, including enslaved peoples and racial, religious, and ethnic minorities. Many of these types of categorical restrictions were rejected by the Second Amendment and should serve as "cautionary tales" today. *Rahimi*, 255 S. Ct. at 1946 (Thomas, J., dissenting) ("Far from an exemplar of Congress's authority, the discriminatory regimes the Government relied upon are cautionary tales. They warn that when majoritarian interests alone dictate who is 'dangerous,' and thus can be disarmed, disfavored groups become easy prey."). But even those of arguable historical relevance do not

"impose a comparable burden on the right" and are not "comparably justified" to § 922(g)(1)'s categorical disarmament of felons. *Bruen*, 597 U.S. at 29 (explaining the metrics of comparing "relevantly similar" analogues).

Moreover, *Rahimi* undermines any reliance on pre-founding laws. In *Rahimi*, the Supreme Court explained that through the centuries pre-dating the founding, "English law had disarmed not only brigands and highwaymen but also political opponents and disfavored religious groups. By the time of the founding, however, state constitutions and the Second Amendment had *largely eliminated* governmental authority to disarm political opponents on this side of the Atlantic." 144 S. Ct. at 1899 (emphasis added). The Government, therefore, cannot meet its burden by relying on those pre-founding laws.

Given the history of firearm regulation in America, there is "no set of circumstances under which" § 922(g)(1) "would be valid." *See Rahimi*, 144 S. Ct. at 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Founding Era constitutions frequently premised both qualifications for voters and eligibility to hold office on the absence of certain criminal convictions. None incorporated a similar disqualification into the right to keep and bear arms. This Nation, in turn, has no tradition of criminalizing the mere possession of a firearm by an ex-offender like Doster. Even in the Founding Era, legislators knew that some offenders convicted for serious crimes would return to society after completing a sentence of imprisonment longer than one year. Since no group of criminals were historically disarmed, no application of § 922(g)(1) can comply with the Second Amendment. That reality makes § 922(g)(1) facially unconstitutional. There is an obvious collision between § 922(g)(1) and the right to bear arms. That collision renders the statute presumptively unconstitutional, and the historical record provides the government with no meaningful opportunity to combat the presumption. Since no analogous tradition of regulation

exists, § 922(g)(1) cannot be constitutionally applied against Doster or any other American with a criminal record.  Based on the foregoing, the statue is facially unconstitutional because it violates the Second Amendment in all applications.  *See Rahimi*, 144 S. Ct. at 1898.

### IV.    Void-for-Vagueness Argument

Although the Fifth Circuit concluded that § 922(g)(1) is not unconstitutional in all applications, *Diaz*, 116 F.4th at 471-72, the statute remains facially unconstitutional because it fails to provide a person of ordinary intelligence fair notice of what conduct is prohibited.  In *Diaz*, the court recognized that while § 922(g)(1) was constitutional as applied to Diaz's prior felony convictions, it might not be constitutional as applied to different predicate convictions:

> We emphasize that our holding is not only premised on the fact that Diaz is a felon.  Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny.  The legislature has determined that the term "felony" encompasses all crimes punishable by more than one year of imprisonment, rendering Diaz a felon today.  But not all felons today would have been considered felons at the Founding.

*Id.* at 469; *see id.* at 470 n.4 (acknowledging that other predicate convictions may not justify disarmament under § 922(g)(1)).  Post-*Diaz*, there are now many persons who have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), but who cannot be disarmed consistent with the Second Amendment because the Government cannot show a longstanding tradition of disarming someone with a similar criminal history, *see Diaz*, 116 F.4th at 467.

"In our constitutional order, a vague law is no law at all."  *United States v. Davis*, 588 U.S. 445, 447 (2019).  The Constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them."  *Id.*  Due process guarantees that a "person of ordinary intelligence [must have] a reasonable opportunity to know what is prohibited, so he may act accordingly."  *Grayned v. City of Rockford*, 408 U.S. 104 (1972).  Under the current test

permitting disarmament only if the Government "demonstrate[s] that the Nation has a longstanding tradition of disarming someone with [an analogous] criminal history," an ordinary person cannot know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. *Diaz*, 116 F.4th at 467. There is nowhere that an ordinary person with a past criminal conviction can look for a "sure way to know what consequences will attach to their conduct," and to determine whether possessing a firearm is constitutionally permitted or will expose them to federal prosecution. *Davis*, 588 U.S. at 448. *Bruen*, *Rahimi*, and *Diaz* make clear that it is not enough to look to the statute for guidance, and caselaw is likewise unhelpful as *Diaz* requires courts to engage in historical analysis for each predicate felony to ensure that there is a sufficient longstanding tradition of disarmament.

"When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 588 U.S. at 448. Section § 922(g)(1) is facially unconstitutional because it fails to provide an ordinary person with fair notice of what conduct is prohibited. Accordingly, this Court should dismiss the indictment and "invite Congress to try again." *Id.*

### V.     Commerce Clause Argument

Doster further seeks dismissal of the indictment because the "possess" prong of § 922(g)(1) constitutes an unconstitutional extension of Congress's authority under the Commerce Clause.

The test for determining the scope of Congressional power to regulate activities affecting interstate commerce is set forth in *United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the Supreme Court found that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.* at 559. The *Lopez* decision appeared to, but did

not expressly, overrule the more permissive test for federal regulation of gun possession articulated in *Scarborough v. United States*, 431 U.S. 563 (1977), which required only the "minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575.

Members of the Supreme Court and lower courts have noted that *Lopez* and *Scarborough* are irreconcilable. *See Alderman v. United States*, 131 S. Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of certiorari) ("*Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez*."); *United States v. Seekins*, 52 F.4th 988, 991-92 (5th Cir. 2022) (Ho, J., dissenting) (citing cases); *United States v. Kuban*, 94 F.3d 971, 977 (5th Cir. 1996) (DeMoss, J., dissenting) ("[T]he precise holding in *Scarborough* is in fundamental and irreconcilable conflict with the rationale of [*Lopez*].").  But the Supreme Court has not addressed the precise impact of *Lopez* on *Scarborough*. *See United States v. Hill*, 927 F.3d 188, 215 n.10 (4th Cir. 2019) (Agee, J., dissenting) ("While some tension exists between *Scarborough* and the Supreme Court's decision in decision in *Lopez*, the Supreme Court has not granted certiorari on a case that would provide further guidance").  Lacking clear guidance, lower courts after *Scarborough* have continued to hold that § 922(g)(1)'s nexus element can be satisfied if the firearm traveled—at any point—across a state boundary. *See, e.g., United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996).

This minimal nexus requirement in *Scarborough* does not satisfy *Lopez*.  Mere gun possession—the crime for which Doster is charged—involves entirely local, non-commercial activity.  It does not involve participation in any cognizable market. *See Rawls*, 85 F.3d at 243 (Garwood, J., concurring) ("[O]ne might well wonder how it could be rationally concluded that mere possession of a firearm in any meaningful way concerns interstate commerce simply because the firearm had, perhaps decades previously before the charged possessor was even born,

fortuitously traveled in interstate commerce"). *Scarborough*'s reading of the § 922(g)(1) nexus element is thus too broad, and it impermissibly extends federal power over purely local activity.

In *United States v. Seekins*, 52 F.4th 988, 989 (5th Cir. 2022) (Ho, J., dissenting) (citation omitted), Judge Ho, dissenting from the court's denial of rehearing en banc, warned of the overreach of the Commerce Clause as it relates to § 922(g), lamenting that:

> For too long, our circuit precedent has allowed the federal government to assume all but plenary power over our nation. In particular, our circuit precedent licenses the federal government to regulate the mere possession of virtually every physical item in our nation—even if it's undisputed that the possession of the item will have zero impact on any other state in the union. The federal government just has to demonstrate that the item once traveled across state lines at some point in its lifetime, no matter how distant or remote in time.
>
> *That is no limit at all*. If the only thing limiting federal power is our ability to document (or merely speculate about) the provenance of a particular item, the Founders' assurance of a limited national government is nothing more than a parchment promise.

Much like the circumstances Judge Ho complained of in *Seekins*, in this case, there is no record evidence that Doster's possession of a firearm will have any impact on any other state and there is no record evidence of any commercial transaction of any kind or that the firearm traveled across state lines at any particular moment in time. *See id.* at 990. Current precedent fails to recognize that "[t]here must be *some* limit on federal power under the Commerce Clause" and in the context of § 922(g), "allows the federal government to regulate any item so long as it was manufactured out-of-state—without any regard to when, why, or by whom the item was transported across state lines." *Id.* (emphasis in original). This allows the federal government to regulate "virtually every tangible item anywhere in the United States"; "it's hard to imagine any physical item that has not traveled across state lines at *some* point in its existence, either in whole or in part." *Id.*

The Commerce Clause power "must be read carefully to avoid creating a general federal authority akin to the police power." *NFIB v. Sebelius*, 567 U.S. 519, 536 (2012); *see also Alderman*, 131 S. Ct. at 703 (Thomas, J., dissenting) ("[P]ermit[ting] Congress to regulate or ban possession of any item that has ever been offered for sale or crossed state lines" would be "[s]uch an expansion of federal authority" as to "trespass on state police powers."). To find that § 922(g)(1) does not constitute Congressional overreach under the Commerce Clause supports a view that it is enough to confer federal jurisdiction "that some object (or component of an object) at some unknown (and perhaps unknowable) point in time traveled across state lines"; it is therefore "hard to imagine anything that would remain outside the federal government's commerce power." *Seekins*, 52 F.4th at 990 (Ho, J., dissenting). "There is no plausible reading of the Commerce, as originally understood by our Founders, that could possibly give the federal government such reach." *Id.* (citations omitted). Accordingly, this Court should dismiss the indictment because § 922(g)(1) is an unconstitutional extension of Congress's authority under the Commerce Clause.

Although thus far the Fifth Circuit has adhered to the view that *Scarborough*'s "minimal nexus" is sufficient both to prove guilt under the statute and to bring any subsequent act of possession within Congress's power to regulate, *Alcantar*, 733 F.3d at 145–46, Doster urges this Court to hold that § 922(g)'s possession prong, as commonly understood and applied, exceeds Congress's enumerated powers.

## VI.    Equal Protection Argument

The Fifth and Fourteenth Amendments to the United States Constitution establish that "equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights" and that "in the administration of criminal justice, no different or

higher punishment should be imposed upon one than such as is prescribed to all for like offenses." *Yick Wo v. Hopkins*, 118 U.S. 356, 367-68 (1886) (internal quotations omitted). Federal laws are subject to strict scrutiny and may violate equal protection rights if they unevenly burden a fundamental right or target a suspect class. *See, e.g., Heller*, 509 U.S. at 319.

Section 922(g)(1) burdens Doster's fundamental right to keep and bear arms. As discussed more fully above, Doster has a fundamental right to keep and bear arms and this Court should apply strict scrutiny to § 922(g)(1). Because the statute contains no uniform definition of the conduct that will result in the loss of the right to possess a firearm and instead relies on diverse state definitions, § 922(g)(1) cannot withstand strict scrutiny. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."). Moreover, § 922(g)(1) does not consistently restore the right to keep and bear arms and instead relies upon disparate state restoration schemes, resulting in a lack of uniform application. *See id.* Because § 922(g)(1) lacks uniform application, it violates the Fifth Amendment's equal protection guarantee, and this Court should dismiss the indictment filed against Doster.

WHEREFORE, for the reasons stated above, Doster respectfully requests that this Court dismiss the indictment filed against him on any or all grounds articulated.

Respectfully submitted, this 16th day of October, 2024.

Respectfully submitted,

 */s/ Michael L. Scott*
Michael L. Scott, MB#101320
Senior Litigator
200 South Lamar St., Suite 200-N
Jackson, MS 39201
Telephone: 601-948-4284
Facsimile: 601-948-5510
Email: mike_scott@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I, Michael L. Scott, hereby certify that on this day I electronically filed the foregoing <u>Motion to Dismiss the Indictment</u> with the Clerk of the Court using ECF system which sent notification of such filing to all attorneys of record.

This the 16th day of October, 2024.

<u>/s/Michael L. Scott</u>
Senior Litigator